**24-11230, 24-13317**
**(CONSOLIDATED)**

_____

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**
_____

SHERIFF OF BROWARD COUNTY

Plaintiff/Appellee,

v.

EVANSTON INSURANCE COMPANY

Defendant/Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
No. 22-cv-62076-WPD

_____

**INITIAL BRIEF OF APPELLANT**
**EVANSTON INSURANCE COMPANY**
**IN CASE NO. 24-13317**

_____

Samuel B. Spinner (FBN 118922)          Joseph H. Lang, Jr. (FBN 59404)
CARLTON FIELDS, P.A.                     CARLTON FIELDS, P.A.
700 N.W. 1st. Avenue                     4221 W. Boy Scout Blvd.
Suite 1200                               Suite 1000
Miami, Florida 33136                     Tampa, Florida 33607
sspinner@carltonfields.com               jlang@carltonfields.com


_Attorneys for Defendant/Appellant Evanston Insurance Company_

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure Rule 26.1 and 11th Circuit Rule 26.1-1(a), Defendant-Appellant Evanston Insurance Company provides this Certificate of Interested Persons and Corporate Disclosure Statement. The following trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations have an interest in the outcome of this appeal:

1.  Allhalel, Joshua R. (Counsel for Plaintiff/Appellee)

2.  Allhalel Law (Counsel for Plaintiff/Appellee)

3.  Augustin-Birch, Honorable Panayotta D. (United States Magistrate Judge for the Southern District of Florida)

4.  Carlton Fields, P.A. (Counsel for Defendant/Appellant)

5.  Dimitrouleas, Honorable William P. (United Stated District Judge for the Southern District of Florida)

6.  Evanston Insurance Company (Defendant/Appellee)

7.  Ferguson, David (Counsel for Plaintiff/Appellee)

8.  Fields, Alexis (Counsel for Plaintiff/Appellee)

9.  Haimovitch, Seth D. (Counsel for Plaintiff/Appellee)

10. Kennedys CMK, LLP (Counsel for Defendant/Appellant)

11. Kopelowitz Ostrow Ferguson Weiselberg Gilbert (Counsel for Plaintiff/Appellee)

12. Lang Jr., Joseph H. (Counsel for Defendant/Appellant)

13. Lewis, Jordan H. (Counsel for Defendant/Appellant)

14.     Markel Group, Inc. (**NYSE: MKL**) (see disclosure statement below)

15.     Mazer, Jason S. (Counsel for Plaintiff/Appellee)

16.     Mazer Law P.A. (Counsel for Plaintiff/Appellee)

17.     Perkins, Kristen D. (Counsel for Defendant/Appellant)

18.     Spinner, Samuel B. (Counsel for Defendant/Appellant)

19.     Tony, Gregory, in his official capacity as Sheriff of Broward County (Plaintiff/Appellee)

20.     Vander Klok, Jedidiah D. (Counsel for Defendant/Appellant)

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-2, undersigned counsel hereby certifies that Defendant/Appellant Evanston Insurance Company is a wholly-owned subsidiary of Markel Group., Inc., a publicly-traded company (**NYSE: MKL**). No individual or entity owns more than 10% of Markel Group, Inc. stock.

## STATEMENT REGARDING ORAL ARGUMENT

As indicated in its Initial Brief in Case No. 24-11230, Evanston submits that this consolidated appeal involves novel issues regarding interpretation of Florida Supreme Court precedent and whether Florida law recognizes a sophisticated insured exception to *contra proferentem*. Oral argument would assist the panel in deciding these issues.

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................ i

TABLE OF CONTENTS .................................................................................. ii

TABLE OF CITATIONS ................................................................................. iv

JURISDICTIONAL STATEMENT……………………………………………..1

STATEMENT OF THE ISSUES ....................................................................... 2

STATEMENT OF THE CASE ........................................................................... 3

    A.   BSO's Amended Complaint ....................................................................5

    B.   Pre-Suit Communications ......................................................................7

    C.   Motions For Summary Judgment ..........................................................10

    D.   BSO Never Exhausted the AAD ..........................................................11

    E.   Final Judgment and First Appeal ..........................................................12

    F.   BSO's Motion for Attorneys' Fees and Non-Taxable Costs ...................12

    G.   Magistrate Judge's Report and Recommendation ..................................13

    H.   Fee Judgment and Second Appeal ........................................................15

SUMMARY OF THE ARGUMENT ..................................................................16

ARGUMENT.....................................................................................................17

    I.   Standard of Review.................................................................................17

II.    This Court Should Reverse The Fee Judgment If It Reverses The Final Judgment ........................................................17

II.    BSO Is Not Entitled To Attorneys' Fees And Costs Because Evanston Never Denied A Claim For Policy Benefits ...........................................................................................18

    A.    Attorneys' Fees Statutes Derogate Common Law ................... 19

    B.    An Insurer Must Deny Policy Benefits To Trigger Entitlement To Attorneys' Fees And Costs ...............................20

    C.    Courts Applying Florida Law Deny Entitlement To Fees When The Insured Files An Unnecessary Declaratory Judgment Action...................................................23

    D.    Evanston Did Not Deny A Claim For Insurance Benefits....................................................................................25

        1.    BSO Never Alleged That Evanston Denied Coverage........................................................................25

        2.    Evanston Did Not Deny Coverage Before Suit...............27

        3.    BSO Never Exhausted The AAD ....................................29

CONCLUSION ......................................................................................31

CERTIFICATE OF COMPLIANCE....................................................33

CERTIFICATE OF SERVICE..............................................................34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*7635 Mandarin Drive, LLC v. Certain Underwriters at Lloyd's, London*,
    392 So. 3d 592 (Fla. 4th DCA 2024)................................................................22

*\*Basik Exports & Imports, Inc. v. Preferred Nat'l Ins. Co.*,
    911 So. 2d 291 (Fla. 4th DCA 2005)........................................................23, 24

*Bryant v. GeoVera Specialty Ins. Co.*,
    271 So. 3d 1013 (Fla. 4th DCA 2019)............................................................19

*Capitol Specialty Ins. Corp. v. Ortiz*,
    2019 WL 383868 (S.D. Fla. Jan. 15, 2019)....................................................20

*Castellanos v. Next Door Co.*,
    192 So. 3d 431 (Fla. 2016)............................................................................19

*Cavalieri v. Avior Airlines C.A.*,
    2022 WL 1530946 (11th Cir. May 16, 2022)..................................................17

*CSX Transp., Inc. v. Gen. Mills, Inc.*,
    82 F. 4th 1315 (11th Cir. 2023)......................................................................17

*First Floridian Auto & Home Ins. Co. v. Myrick*,
    969 So. 2d 1121 (Fla. 2d DCA 2007)............................................................21

*Goldman v. United Servs. Auto. Ass'n*,
    244 So. 3d 310 (Fla. 4th DCA 2018)..............................................................30

*Ins. Co. of N. Am. v. Lexow*,
    602 So. 2d 528 (Fla. 1992)............................................................................21

*Ivey v. Allstate Ins. Co.*,
    774 So. 2d 679 (Fla. 2000)............................................................................21

*\*J.P.F.D. Inv. Corp. v. United Specialty Ins. Co.*,
    769 F. App'x 698 (11th Cir. 2019)......................................................21, 26–27

iv

*Jerkins v. USF & G Specialty Ins. Co.*,
982 So. 2d 15 (Fla. 5th DCA 2008).................................................21

*Johnson v. Omega Ins. Co.*,
200 So. 3d 1207 (Fla. 2016)................................................19, 20

*Kahane v. UNUM Life Ins. Co. of Am.*,
563 F. 3d 1210 (11th Cir. 2009)........................................17

*Lewis v. Universal Prop. & Cas. Ins. Co.*,
13 So. 3d 1079 (Fla. 4th DCA 2009)...............................22

*Niemis v. CCC Intelligent Sols., Inc.*,
2021 WL 3508882 (M.D. Fla. Aug. 10, 2021) ...............22

*Nix v. Kinsale Ins. Co.*,
540 F. Supp. 3d 1089 (N.D. Fla. 2021) ..........................23

*\*Peninsula II Devs., Inc. v. Westchester Fire Ins. Co.*,
2018 WL 1953841 (S.D. Fla. Apr. 25, 2018) ............24, 25, 27

*People's Tr. Ins. Co. v. Farinato*,
315 So. 3d 724 (Fla. 4th DCA 2021).................................22

*Pepper's Steel & Alloys, Inc. v. United States*,
850 So. 2d 462 (Fla. 2003).................................................19

*Perez v. Miami-Dade Cnty.*,
186 F. App'x 936 (11th Cir. 2006)...................................17

*Progressive Am. Ins. Co. v. Glassmetics, LLC*,
343 So. 3d 613 (Fla. 2d DCA 2022)..................................21

*River Bridge Corp. v. Am. Somax Ventures*,
76 So. 3d 986 (Fla. 4th DCA 2011)..................................18

*RJ's Int'l Trading, LLC v. Crown Castle S., LLC*,
98 F. 4th 1330 (11th Cir. 2024)........................................19

*Royale Green Condo. Ass'n, Inc. v. Aspen Specialty Ins. Co.*,
2009 WL 799428 (S.D. Fla. Mar. 24, 2009)......................21

*Rutherford v. Scottsdale Ins. Co.*,
    2021 WL 12133906 (N.D. Fla. June 15, 2021) ...............................................23

*Sanderson v. Zurich Am. Ins. Co.*,
    2015 WL 12838358 (M.D. Fla. Sept. 30, 2015) .............................................30

*State Farm Fla. Ins. Co. v. Lime Bay Condo., Inc.*,
    187 So. 3d 932 (Fla. 4th DCA 2016).............................................................22

*State Farm Fla. Ins. Co. v. Lorenzo*,
    969 So. 2d 393 (Fla. 5th DCA 2007).............................................................22

*Stavrakis v. Underwriters at Lloyd's London*,
    2018 WL 4908104 (M.D. Fla. June 29, 2018)................................................20

*Stonewall Ins. Co. v. W.W. Gay Mech. Contractor, Inc.*,
    351 So. 2d 403 (Fla. 1st DCA 1977) .............................................................29

*Travelers Indem. Ins. Co. of Ill. v. Meadows MRI, LLP*,
    900 So. 2d 676 (Fla. 4th DCA 2005).............................................................22

*Travelers of Fla. v. Stormont*,
    43 So. 3d 941 (Fla. 3d DCA 2010).................................................................31

*Tristar Lodging, Inc. v. Arch Specialty Ins. Co.*,
    215 F. App'x 879 (11th Cir. 2007).................................................................21

*Tristar Lodging, Inc. v. Arch Specialty Ins. Co.*,
    434 F. Supp. 2d 1286 (M.D. Fla. 2006)..........................................................28

*Vital Pharm., Inc. v. Pepsico, Inc.*,
    2022 WL 2066406 (11th Cir. June 8, 2022) ...................................................17

**Statutes**

§ 626.9373, Fla. Stat. ...................................................4, 12, 13, 14, 16, 19, 20, 21

§ 768.28, Fla. Stat. ........................................................................................8

# JURISDICTIONAL STATEMENT

The district court had diversity jurisdiction over this removed action pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000. The district court also determined it had jurisdiction under 28 U.S.C § 2201. This Court has jurisdiction to address this appeal under 28 U.S.C. § 1291 because it arises from a final judgment signed and filed by the district court judge on September 13, 2024. Evanston timely appealed the final judgment on October 11, 2024.

**STATEMENT OF THE ISSUES**

I.     Whether the district court erred in granting BSO's motion for attorneys' fees and costs pursuant to section 626.9373, Florida Statutes, when BSO never made a claim for insurance policy benefits before filing suit.

## STATEMENT OF THE CASE

May an insured recover attorneys' fees and costs when it files suit to obtain a declaration regarding the interpretation of one insurance policy term without first presenting a formal claim for insurance benefits? The district court answered that question affirmatively and granted Plaintiff/Appellee Sheriff of Broward County's ("BSO") motion for attorneys' fees and costs in this declaratory relief action against BSO's excess insurance carrier, Evanston Insurance Company ("Evanston").

This case arises from the mass shooting by Nikolas Cruz on February 14, 2018, at Marjorie Stoneman Douglas High School in Parkland, Florida (the "Parkland Shooting Incident"). The Parkland Shooting Incident victims filed numerous lawsuits against BSO. Before making a claim for indemnity and before exhausting the applicable self-insured retention and separate deductible, BSO sued Evanston to obtain a judicial interpretation as to how one isolated policy term would apply to a potential future claim for excess insurance benefits if and when BSO fully exhausted its underlying limits.

Specifically, BSO sought a declaration that the Parkland Shooting Incident constituted only one "occurrence" under the Policy subject to one $500,000 self-insured retention ("SIR"), not multiple separate occurrences each subject to a separate $500,000 SIR. The parties filed competing motions for summary judgment on that issue. (Doc. 88; Doc. 93). The district court granted BSO's motion, denied

Evanston's motion, and entered final declaratory judgment for BSO. (Doc. 110; Doc. 111) ("Final Judgment").[1]

BSO then moved for an award of attorneys' fees and non-taxable costs pursuant to section 626.9373, Florida Statutes. (Doc. 121). Over Evanston's objections, the district court granted BSO's motion, determining Evanston denied BSO's claim for insurance policy benefits ("Fee Judgment"). (Doc. 130).

The district court misapplied settled Florida law that an insured cannot recover attorneys' fees and costs under section 626.9373 unless the insurer denies a claim for insurance policy benefits. BSO never demanded policy benefits and instead filed suit so a court would determine how Evanston's excess policy would apply to a potential future claim if BSO exhausted its underlying limits, which it never exhausted. Upholding the district court's award of attorneys' fees and costs under these circumstances will encourage insureds to race to the courthouse and file suit over any potential disagreement over insurance policy terms without first formally presenting a claim for insurance policy benefits. This Court should reverse.

---

[1] Evanston appealed the Final Judgment in Case No. 24-11230. The parties then litigated the issue of BSO's entitlement to attorneys' fees and costs. After the district court entered the Fee Judgment, Evanston filed a second notice of appeal. This Court consolidated the two appeals after Evanston filed its initial brief in Case No. 24-11230. Pursuant to this Court's November 13, 2024 consolidation order, Evanston hereby files its initial brief on the attorneys' fees and costs issues, and the parties will thereafter file a unified answer brief and a unified reply brief, respectively.

## STATEMENT OF THE FACTS

### A.    BSO's Amended Complaint.

BSO filed an amended complaint for declaratory relief against Evanston arising from the Parkland Shooting Incident. (Doc. 20). BSO alleged the incident spawned numerous lawsuits against BSO and Scot Peterson—the BSO school resource deputy stationed at MSD—alleging they negligently failed to prevent the shooting. (Doc. 20 at ¶¶ 7–9). BSO attached the complaints from two such lawsuits pending against it in Florida state court. (Doc. 20-1; Doc. 20-2).

Evanston issued to BSO policy number MPEMID0002-16-01 effective from October 1, 2017, to October 1, 2018 (the "Policy"). (Doc. 20 at ¶ 10; Doc. 20-3). The Policy has a per occurrence SIR of $500,000. (Doc. 20 at ¶ 11; Doc. 20-3 at 7). The SIR "applies separately to each and every 'occurrence' and offense covered under this Coverage Part." (Doc. 20 at ¶ 18; Doc. 20-3 at 22). "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 20 at ¶ 14; Doc. 20-3 at 25).

The Policy provides that Evanston will only pay an "ultimate net loss" exceeding the $500,000 per occurrence SIR. (Doc. 20 at ¶ 12; Doc. 20-3 at 11). An endorsement amends "ultimate net loss" to exclude "claim expenses," which are expenses incurred in investigating, adjusting, defending, or settling claims. (Doc. 20 at ¶ 16; Doc. 20-3 at 27, 54). This endorsement states, "The definition of 'ultimate

net loss' is amended to remove reference to 'claim expenses' and as a result, 'claim expenses' will not be included in the calculation of 'ultimate net loss.'" (Doc. 20 at ¶ 19; Doc. 20-3 at 54). As amended, "ultimate net loss" means the total amount of damages "awarded in favor of third parties that the insured is legally liable to pay because of 'bodily injury', 'property damage' or 'personal and advertising injury.'" (Doc. 20 at ¶ 12; Doc. 20-3 at 27).

Because the Policy provides excess coverage, BSO has the "duty to investigate and defend any 'claim' or 'suit' to which this insurance applies and [BSO] shall be responsible for the payment of any resulting 'claim expenses.'" (Doc. 20 at ¶ 15; Doc. 20-3 at 12). Evanston has "no duty to defend any claim or 'suit'" but it may assume control of the defense, at its own expense, if Evanston determines that the loss may exceed the SIR. (Doc. 20 at ¶ 17; Doc. 20-3 at 12).

The Policy was also endorsed to include a $500,000 Annual Aggregate Deductible ("AAD") in addition to the $500,000 per occurrence SIR:

> Our obligation to pay "ultimate net loss" in excess of the Self-Insured Retention under this policy does not apply until you have paid the full amount of the Annual Aggregate Deductible shown in the Schedule above. The Annual Aggregate Deductible applies to all "ultimate net loss" in excess of the Self-Insured Retention, regardless of the number of Coverage Parts attached to this policy, insureds, claims ("claims") made or "suits" brought.
>
> The Annual Aggregate Deductible is not considered a part of the Self-Insured Retention and does not accrue to the

> exhaustion of the Self-Insured Retention or Annual
> Aggregate Self-Insured Retention, if applicable.

(Doc. 20-3 at 53). Reading these provisions together, BSO must exhaust a $500,000 per occurrence SIR and the $500,000 AAD to trigger Evanston's obligation to pay an ultimate net loss in connection with a covered occurrence. Claim expenses can exhaust the SIR, but not the AAD. (Doc. 20-3 at 53). The AAD is exhausted only by amounts paid with respect to judgments and settlements that exceed the per-occurrence SIR on a claim. (Doc. 20-3 at 53).

BSO alleged it was unclear whether the Parkland Shooting Incident was one occurrence, such that it must exhaust only one $500,000 SIR, or multiple occurrences, such that it must exhaust a separate $500,000 for each victim who filed suit, to potentially trigger Evanston's duty under the Policy to pay an ultimate net loss. (Doc. 20 at ¶¶ 27–30).

## B. Pre-Suit Communications.

On February 15, 2018, the day after the Parkland Shooting Incident, Evanston emailed John Greene, BSO's director of risk management, to inquire whether BSO had any potential involvement in the incident. (Doc. 90-56 at 1–2). Greene responded that BSO may face exposure because it employed the onsite school resource deputy. (Doc. 90-56 at 1). Greene advised that BSO's potential liability for

the entire Parkland Shooting Incident would not exceed $300,000[2] and, therefore, Evanston's excess Policy "should not be touched unless something crazy turns up." (Doc. 90-56 at 1).

On March 9, 2018, Evanston sent a reservation of rights letter to BSO. (Doc. 123-1). Evanston memorialized BSO's request for Evanston to opine whether the Parkland Shooting Incident constituted one occurrence or multiple occurrences. (Doc. 123-1 at 1). Evanston responded, based on its review of applicable law, that the Parkland Shooting Incident "represents the potential for multiple offenses if multiple claims are filed alleging civil rights violations." (Doc. 123-1 at 3). Evanston cautioned that "our opinions regarding the number of occurrences or offenses at issue are necessarily preliminary and are based on our understanding of what a future claim or lawsuit might allege as well as our interpretation of current Florida case law." (Doc. 123-1 at 3). Evanston "reserve[d] the right to alter our position based on the allegations actually made in any future claim or lawsuit." (Doc. 123-1 at 3).

On April 23, 2019, Evanston sent BSO a second reservation of rights after BSO provided notice of a lawsuit arising from the Parkland Shooting Incident. (Doc. 123-2). Evanston stood by its preliminary opinion that each victim of the Parkland Shooting Incident represented a separate occurrence. (Doc. 123-2 at 3). Evanston

---

[2] BSO cannot be held liable for more than $300,000 in total for all claims arising from the Parkland Shooting Incident. *See* § 768.28(5), Fla. Stat.

also reminded BSO that it must separately exhaust the $500,000 AAD before the Policy could provide coverage for an ultimate net loss. (Doc. 123-2 at 3). Evanston explained that the reservation of rights "is not intended to be necessarily exhaustive or complete. Our investigation is ongoing and this letter is based on presently available information. We reserve the right to supplement this coverage position and assert additional grounds for disclaimer of coverage if new or additional information becomes available." (Doc. 123-2 at 3).

On August 6, 2020, BSO informed Evanston that BSO incurred over $750,000 in claim expenses arising from the Parkland Shooting Incident. (Doc. 124-1 at 1). BSO surmised that it would exhaust its self-insured limits "in the very near future" and that it expected Evanston to thereafter provide coverage. (Doc. 124-1 at 1). Though not explicitly, BSO appeared to contend that paying claim expenses alone—not settlements or judgments—could exhaust the AAD. BSO maintained its position that the entire Parkland Shooting Incident constituted only one occurrence subject to only one SIR. (Doc. 124-1 at 1–2).

On September 28, 2020, Evanston's counsel responded to BSO's letter, reiterating Evanston's position that BSO must exhaust a separate SIR for each Parkland Shooting Victim who filed suit. (Doc. 124-2 at 1). Therefore, Evanston's counsel explained that BSO would have to exhaust separate SIRs, plus the AAD, to potentially trigger future coverage under the Policy:

Applying the Policy to the principle established by Florida law as set forth above results in the requirement that one or more SIRs be exhausted for the claims of each victim before the [Evanston] Policy can be called upon to provide coverage. Section III. of the General Liability Coverage Part provides that the SIR applies separately to each and every "occurrence" and offense covered under this Coverage Part. [Evanston] has no obligation to pay "ultimate net loss" on behalf of [BSO] until [BSO] pays the full amount of the SIR for each "occurrence" and the full amount of the Annual Aggregate Deductible of $500,000 scheduled on the Policy.

In accordance with the foregoing, as each shooting victim's claim against [the BSO] is at least one separate "occurrence" under the Policy, the $500,000 SIR must be separately exhausted as to each "occurrence." Consequently, [Evanston] has no obligation to pay "ultimate net loss" unless and until the $500,000 SIR is exhausted for each occurrence (i.e., at least every claim/suit) and the Annual Aggregate Deductible has been satisfied.

(Doc. 124-2 at 4).

## C.    Motions for Summary Judgment.

BSO and Evanston filed cross motions for final summary judgment. (Doc. 88; Doc. 93). Evanston raised four arguments in support of its motion: (1) BSO improperly sought an advisory opinion; (2) the Parkland Shooting Incident cannot independently trigger coverage; (3) the Parkland Shooting Incident constitutes multiple occurrences as a matter of law; and (4) even were the definition of "occurrence" ambiguous, *contra proferentem* does not apply because BSO is a

sophisticated insured and the parties intended for multiple-victim incidents to result in multiple occurrences subject to separate $500,000 SIRs. (Doc. 93).

BSO argued that: (1) the parties had a ripe case or controversy; (2) "occurrence" is ambiguous and should be construed in favor of a ruling that the Parkland Shooting Incident is only one occurrence; and (3) Florida law does not recognize a sophisticated insured exception to *contra proferentem*. (Doc. 100).

### D. BSO Never Exhausted the AAD.

As recounted above, BSO informed Evanston in August 2020 that it would exhaust one $500,000 SIR and the $500,000 AAD "in the very near future." (Doc. 124-1 at 1). In reality, BSO still had not exhausted the AAD for the subject policy period over three years later. On February 2, 2024, BSO filed Greene's declaration in response to Evanston's summary judgment statement of facts. (Doc. 99 at ¶ 7; Doc. 99-2). Greene attached a ledger showing all claim expenses incurred and indemnity paid during the Policy period. (Doc. 99-2). The ledger has four columns: Coverage (type of claim), Paid Legal (claim expenses), Paid BI/Liability (judgments and settlements), and the Paid Total. (Doc. 99-2).

The Policy provides that for a settlement or judgment to contribute towards the AAD, BSO must first incur at least $500,000 total in claim expenses, judgments, or settlements to exhaust the SIR on that claim. (Doc. 20-3 at 11, 27, 53–54). Greene's ledger shows that there are no claims in which the combined total of Paid

Legal and Paid BI/Liability exceeds $500,000. (Doc. 99-2). Consequently, none of the indemnity BSO paid on these claims contributed towards exhausting the AAD.

## E. Final Judgment and First Appeal.

The district court entered an omnibus order granting BSO's motion for summary judgment and denying Evanston's motion. (Doc. 110). Although Evanston pointed out that Greene's claim ledger showed BSO did not exhaust the AAD, the district court found it "undisputed in the record that BSO has already exhausted the separate $500,000 AAD by payment of covered judgments or settlements during the applicable period for the Policy." (Doc. 110 at 9). The district court ruled that the term "occurrence" was ambiguous and accepted BSO's favored interpretation that the Parkland Shooting Incident was only one occurrence. (Doc. 110 at 10). The district court entered the Final Judgment for BSO, "declaring that the Parkland Shooting Incident constitutes a single 'occurrence' under the Policy and that BSO must exhaust a single SIR of $500,000 under the Policy." (Doc. 111 at 1).

## F. BSO's Motion for Attorneys' Fees and Non-Taxable Costs.

BSO moved for an award of attorneys' fees and non-taxable costs pursuant to sections 626.9373 and/or 627.428, Florida Statutes. [3] (Doc. 121). BSO argued that it was compelled to file a declaratory judgment action because Evanston would not

---

[3] BSO explained that the parties reached an agreement as to the amount of fees and non-taxable costs to which BSO would be entitled if the district court granted BSO's motion. (Doc. 121 at 1).

agree to provide future coverage for the Parkland Shooting Incident claims upon the exhaustion of one $500,000 SIR. (Doc. 121 at 8). BSO did not reference the AAD in its motion. (Doc. 121 at 1–10).

Evanston responded that BSO was not entitled to an award of attorneys' fees and non-taxable costs because Evanston never denied coverage for the Parkland Shooting Incident. (Doc. 123 at 2). BSO did not demand indemnity from Evanston; it simply asked Evanston to opine whether the Parkland Shooting Incident was a single or multiple occurrences. (Doc. 123 at 2). BSO also did not request a declaration that it was entitled to indemnity for an ultimate net loss already incurred, but rather that it had to exhaust only one SIR before making a future claim. (Doc. 123 at 4). Under Florida law, Evanston argued, an insurer must incorrectly deny a claim for policy benefits to trigger the insured's entitlement to attorneys' fees upon prevailing against the insurer, which did not occur in this case. (Doc. 123 at 5–8).

### G.   Magistrate Judge's Report and Recommendation.

The district court referred BSO's motion to the magistrate judge for a report and recommendation. (Doc. 122). The magistrate judge recommended that the district judge grant BSO's motion. (Doc. 125). The magistrate judge acknowledged that an insurer must deny insurance benefits to trigger an insured's right to recover fees and costs under section 626.9373. (Doc. 125 at 4–5). The magistrate judge

determined, however, that BSO made a claim for insurance benefits and that Evanston denied that claim. (Doc. 125 at 6).

Specifically, the magistrate judge relied on Evanston's September 2020 letter, determining Evanston's statement that the Policy required exhaustion of multiple SIRs before coverage for an ultimate net loss could potentially be triggered was tantamount to a denial of insurance benefits. (Doc. 125 at 8). The magistrate judge recommended that the district court grant BSO's motion for attorneys' fees and non-taxable costs pursuant to section 626.9373, Florida Statutes. (Doc. 125 at 8–9).

Evanston objected to the report and recommendation because BSO never made a claim for benefits, and thus, Evanston could not have denied coverage. (Doc. 126 at 2). Evanston pointed to BSO's statement in response to Evanston's motion to dismiss that BSO was "not yet seeking to have the Court direct Evanston to indemnify it." (Doc. 23 at 15; Doc. 126 at 3). Evanston also argued that exhausting one $500,000 SIR could not alone trigger coverage because BSO must also exhaust the separate $500,000 AAD by paying judgments or settlements. (Doc. 126 at 4, 11).

Though BSO represented in its August 2020 letter that it would soon exhaust both the SIR and AAD, BSO never submitted a claim for benefits in the two years that passed before it filed this lawsuit. (Doc. 126 at 11). Evanston argued the magistrate judge misinterpreted the September 2020 letter as a denial of benefits because it owed no benefits to BSO at that time. (Doc. 126 at 12). Evanston reiterated

its position that BSO must exhaust a separate SIR for each victim, plus the AAD, before it could properly make a claim for an ultimate net loss under the Policy. (Doc. 126 at 12–13). Absent a claim for indemnity, Evanston had no opportunity to investigate and develop a coverage position based on all Policy provisions. (Doc. 126 at 13). Because Evanston did not deny insurance benefits due and owing to BSO, it urged the district court to sustain its objections and deny BSO's motion for attorneys' fees and costs. (Doc. 126 at 13–14).

## H.     Fee Judgment and Second Appeal.

The district court overruled Evanston's objections and approved the magistrate judge's report and recommendation. (Doc. 130). The district court agreed that "Evanston unequivocally denied insurance benefits until Plaintiff BSO exhausts the $500,000 SIR at least for each plaintiff shooting victim's claim against BSO in the lawsuits arising from the Parkland Shooting Incident." (Doc. 130 at 2). Accordingly, the district court granted BSO's motion for attorneys' fees and non-taxable costs. (Doc. 130 at 2–3). The district court acknowledged that the parties agreed to the amount of recoverable fees and costs and did not submit that issue for adjudication. (Doc. 130 at 3 n.1).

This appeal followed. (Doc. 131).

# SUMMARY OF THE ARGUMENT

The district court erred in granting BSO's motion for attorneys' fees and non-taxable costs. As an initial matter, this Court should reverse the Fee Judgment if it reverses the Final Judgment based on the arguments set forth in the primary appeal. Were this Court to reverse the Final Judgment, BSO would no longer be the prevailing party for the purpose of recovering attorneys' fees and costs.

On the merits, this Court should reverse because the district court erred in determining Evanston denied a claim for insurance policy benefits before BSO filed suit. The record reflects that BSO asked Evanston to opine as to the number of potential occurrences resulting from the Parkland Shooting Incident. BSO never demanded indemnity for an ultimate net loss in connection with the Parkland Shooting Incident and, to the contrary, recognized that it could not seek benefits until exhausting both the SIR and AAD. Despite not meeting these prerequisites to excess insurance coverage, BSO raced to the courthouse to obtain a judicial declaration solely as to the number of occurrences.

Evanston's disagreement with BSO's interpretation of one defined policy term is not tantamount to an unequivocal denial of coverage, which Florida law requires to trigger entitlement to prevailing party attorneys' fees and costs under section 626.9373, Florida Statutes. For these reasons, this Court should reverse the Fee Judgment in all respects.

# ARGUMENT

## I.     Standard Of Review.

This Court reviews questions of law in connection with a district court's award of attorneys' fees de novo and any factual findings for clear error. *Vital Pharm., Inc. v. Pepsico, Inc.*, 2022 WL 2066406, at *3 (11th Cir. June 8, 2022) (quoting *Kahane v. UNUM Life Ins. Co. of Am.*, 563 F. d 1210, 1213 (11th Cir. 2009)). The de novo standard likewise applies to the district court's interpretation of a statute. *CSX Transp., Inc. v. Gen. Mills, Inc.*, 82 F. 4th 1315, 1322 (11th Cir. 2023).

## II.    This Court Should Reverse The Fee Judgment If It Reverses The Final Judgment.

Evanston contends herein that this Court should reverse the Fee Judgment even if it ultimately affirms the Final Judgment for BSO. Of course, if this Court reverses the Final Judgment based on the arguments set forth in the primary appeal, it in turn should reverse the Fee Judgment because BSO will no longer be the prevailing party for the purposes of recovering attorneys' fees and costs.

This Court has held that reversal of an underlying judgment requires reversal of an award of fees and/or costs flowing from the judgment. *See Cavalieri v. Avior Airlines C.A.*, 2022 WL 1530946, at *1 (11th Cir. May 16, 2022) (holding that reversal of underlying judgment required reversal of cost award predicated on that judgment); *Perez v. Miami-Dade Cnty.*, 186 F. App'x 936, 937 (11th Cir. 2006) (same). Florida courts similarly recognize that when "a judgment on which attorney's

fees are predicated is reversed, the attorney's fees judgment should generally be reversed for further proceedings also." *River Bridge Corp. v. Am. Somax Ventures*, 76 So. 3d 986, 989 (Fla. 4th DCA 2011).

Accordingly, if this Court reverses the Final Judgment, it should also reverse the Fee Judgment and need not necessarily reach Evanston's merits challenge to the Fee Judgment. But even if the Final Judgment remains undisturbed, this Court should reverse the Fee Judgment on the merits because Evanston never denied a claim for insurance policy benefits before BSO filed suit to address a hypothetical future claim for indemnity that it never presented to Evanston.

## III. BSO Is Not Entitled To Attorneys' Fees And Costs Because Evanston Never Denied A Claim For Policy Benefits.

The district court erred in granting BSO's motion for attorneys' fees and costs because BSO never demanded indemnity for an ultimate net loss arising from the Parkland Shooting Incident. In fact, BSO filed suit solely to obtain a legal determination as to whether the Parkland Shooting Incident constituted a single occurrence or multiple occurrences. The district court's ruling on that isolated issue in BSO's favor did not result in Evanston owing Policy benefits to BSO, which is a natural consequence of the fact that BSO never sought a declaration on coverage. Absent a formal claim for coverage and denial by Evanston, BSO is not entitled to an award of attorneys' fees and costs as a matter of settled Florida law.

## A. Attorneys' Fees Statutes Derogate Common Law.

State law governs the determination of entitlement to attorneys' fees in a diversity case. *RJ's Int'l Trading, LLC v. Crown Castle S., LLC*, 98 F. 4th 1330, 1335 (11th Cir. 2024). Florida follows the common law American Rule that litigants must bear the cost of their own legal representation. *Castellanos v. Next Door Co.*, 192 So. 3d 431, 451 (Fla. 2016). An exception to this general rule applies when the Legislature enacts a statute entitling recovery of attorneys' fees. *Johnson v. Omega Ins. Co.*, 200 So. 3d 1207, 1215 (Fla. 2016). The Legislature enacted two such statutes relevant here, sections 626.9373 and 627.428, both of which authorize an award of attorneys' fees and costs when an insured prevails in an action against its insurer.[4] Courts strictly construe these statutes because they derogate common law. *Pepper's Steel & Alloys, Inc. v. United States*, 850 So. 2d 462, 465 (Fla. 2003).

The two statutes are virtually identical except that section 627.428 applies to insurers generally, whereas section 626.9373 applies only to surplus lines insurers like Evanston.[5] *Bryant v. GeoVera Specialty Ins. Co.*, 271 So. 3d 1013, 1019 (Fla.

---

[4] The Legislature repealed both statutes effective March 24, 2023. *See* Ch. 2023-15, §§ 10–11, Laws of Fla. Evanston acknowledges that this act applies only to causes action filed after the act's effective date. *Id.* at § 30. BSO filed this lawsuit before the act's effective date.

[5] BSO alternatively sought attorneys' fees under both section 626.9373 and 627.428. The district court granted entitlement under section 626.9373 because Evanston is a surplus lines insurance carrier.

4th DCA 2019). Given their similarity, courts uniformly interpret and apply the two statutes. *Capitol Specialty Ins. Corp. v. Ortiz*, 2019 WL 383868, at *3 (S.D. Fla. Jan. 15, 2019); *see also Stavrakis v. Underwriters at Lloyd's London*, 2018 WL 4908104, at *2 (M.D. Fla. June 29, 2018) ("As those sections are virtually identical, however, whether the fees are predicated upon Section 627.428 or Section 626.9373 is a distinction without a difference.").

At the time Evanston issued the Policy, section 626.9373 provided:

> (1) Upon the rendition of a judgment or decree by any court of this state against a surplus lines insurer in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer on or after the effective date of this act, the trial court or, if the insured or beneficiary prevails on appeal, the appellate court, shall adjudge or decree against the insurer in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the lawsuit for which recovery is awarded.
>
> (2) If awarded, attorney's fees or compensation shall be included in the judgment or decree rendered in the case.

§ 626.9373, Fla. Stat. (2017).

**B.    An Insurer Must Deny Policy Benefits To Trigger Entitlement To Attorneys' Fees And Costs.**

Under Florida law, an insurer must incorrectly deny a claim for insurance benefits to trigger an insured's entitlement to attorneys' fees for prevailing in a subsequent action against the insurer. *Johnson*, 200 So. 3d at 1219. This is because an insurer's denial of a claim for coverage "generates the basic entitlement to the

fees if such denial is incorrect." *Ivey v. Allstate Ins. Co.*, 774 So. 2d 679, 684 (Fla. 2000); *see also Royale Green Condo. Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 2009 WL 799428, at *5 (S.D. Fla. Mar. 24, 2009) (explaining an insured can recover attorneys' fees when "the insured must resort to litigation to compel payment").

This Court and others applying Florida law have recognized that an award of attorneys' fees is legally improper when the insurer has not incorrectly denied a claim for benefits. *J.P.F.D. Inv. Corp. v. United Specialty Ins. Co.*, 769 F. App'x 698, 705 (11th Cir. 2019); *see also Tristar Lodging, Inc. v. Arch Specialty Ins. Co.*, 215 F. App'x 879, 880 (11th Cir. 2007) (affirming denial of entitlement where "there was no showing that the insurer failed to timely pay claims properly made and substantiated"); *Jerkins v. USF & G Specialty Ins. Co.*, 982 So. 2d 15, 17 (Fla. 5th DCA 2008) (explaining that the insurer must dispute coverage for the insured to obtain an award of attorneys' fees) (quoting *First Floridian Auto & Home Ins. Co. v. Myrick,* 969 So. 2d 1121, 1124 (Fla. 2d DCA 2007)).

The requirement for an incorrect denial of benefits reinforces the Legislature's intent for section 626.9373 to discourage insurers from contesting valid claims "and to reimburse successful insureds for their attorney's fees when they are compelled to defend or sue to enforce their insurance contracts." *Progressive Am. Ins. Co. v. Glassmetics, LLC*, 343 So. 3d 613, 618 (Fla. 2d DCA 2022) (quoting *Ins. Co. of N. Am. v. Lexow,* 602 So. 2d 528, 531 (Fla. 1992)). In that respect, an award of

attorneys' fees and costs places the insured in the position it would have been if the insurer "paid the claim or benefits without causing the payee to engage counsel and incur obligations for attorney's fees." *Lewis v. Universal Prop. & Cas. Ins. Co.*, 13 So. 3d 1079, 1081 (Fla. 4th DCA 2009) (quoting *Travelers Indem. Ins. Co. of Ill. v. Meadows MRI, LLP*, 900 So. 2d 676, 679 (Fla. 4th DCA 2005)).

An insured cannot recover attorneys' fees by filing suit "without giving the insurer a chance to complete the claims adjusting process." *Niemis v. CCC Intelligent Sols., Inc.*, 2021 WL 3508882, at *6 (M.D. Fla. Aug. 10, 2021). Courts are loathe to reward an insured with attorneys' fees and costs when suit was not required to obtain policy benefits. *State Farm Fla. Ins. Co. v. Lorenzo*, 969 So. 2d 393, 398 (Fla. 5th DCA 2007). The core issue is whether the lawsuit was a "necessary catalyst to resolve the dispute and force the insurer to satisfy its obligations under the insurance contract." *State Farm Fla. Ins. Co. v. Lime Bay Condo., Inc.*, 187 So. 3d 932, 935 (Fla. 4th DCA 2016).

To discourage a "race to the courthouse" for the purpose of securing a fee award, Florida law requires that the parties first attempt to resolve the claim in good faith. *7635 Mandarin Drive, LLC v. Certain Underwriters at Lloyd's, London*, 392 So. 3d 592, 597 (Fla. 4th DCA 2024). Suit becomes justified only when the claims-adjusting process breaks down and the insurer is no longer attempting to resolve the claim. *People's Tr. Ins. Co. v. Farinato*, 315 So. 3d 724, 729–30 (Fla. 4th DCA

2021); *see also Rutherford v. Scottsdale Ins. Co.*, 2021 WL 12133906, at *2 (N.D. Fla. June 15, 2021) (reasoning that absent a breakdown of the claim process, "the insureds must let the process fully play out before filing suit"); *Nix v. Kinsale Ins. Co.*, 540 F. Supp. 3d 1089, 1092 (N.D. Fla. 2021) (denying insured's motion for fees where insured prematurely filed suit despite insurer acknowledging coverage).

### C. Courts Applying Florida Law Deny Entitlement To Fees When The Insured Files An Unnecessary Declaratory Judgment Action.

With these principles in mind, several courts applying Florida law have ruled that the insured was not entitled to attorneys' fees and costs when it filed a declaratory judgment action despite the insurer complying with its obligations under the policy and not denying a claim for coverage.

In *Basik Exports & Imports, Inc. v. Preferred National Insurance Co.*, 911 So. 2d 291 (Fla. 4th DCA 2005), the insured was sued after an automobile accident but did not report the claim for several months. *Id.* at 292. The insurer defended the claim under a reservation of rights. *Id.* While that action remained pending, the insured filed a separate declaratory judgment action against the insurer. *Id.* The insurer then settled the underlying claim, and the trial court dismissed as moot the insured's separate declaratory judgment action. *Id.*

On appeal, the insured argued it was entitled to recover attorneys' fees under section 627.428 because the insurer's settlement of the underlying case constituted a confession of judgment in the declaratory judgment action. *Id.* The Fourth District

rejected that argument, emphasizing that the insurer took no action that forced the insured to initiate litigation. *Id.* at 294. The court reasoned that rewarding the insured with attorneys' fees would "encourage insureds to rush to the courthouse to file a declaratory judgment action" even where the insurer never breached the policy by incorrectly denying a claim for benefits. *Id.*

In *Peninsula II Developers, Inc. v. Westchester Fire Insurance Co.*, 2018 WL 1953841 (S.D. Fla. Apr. 25, 2018), the court similarly denied entitlement to fees in a declaratory judgment action initiated by the insured. *Id.* at *1. The excess insurer issued an excess liability policy for a construction project that covered the developer, general contractor, and subcontractors. *Id.* The contractors were sued in connection with the installation of defective drywall. *Id.* The primary insurer filed a declaratory judgment action regarding its contractual obligations, and the insureds filed a third-party complaint in that action against the excess insurer for defense and indemnity. *Id.* The primary insurer ultimately paid its policy limits. *Id.* The excess insurer then assumed the defense, negotiated a reduced judgment, and paid that amount. *Id.*

The insured general contractor argued that it was entitled to an award of attorneys' fees in the declaratory judgment, arguing the excess insurer confessed judgment in the underlying litigation. *Id.* at *4. The district court disagreed, ruling the excess insurer neither "outright denied" the claim nor "plainly told" the insured that the policy did not cover the loss. *Id.* at *5. In denying entitlement, the court

concluded that because the insured "has not presented record evidence that [the excess insurer] denied all coverage of the claims . . . before [the insured] filed the instant declaratory judgment action, [the insured] has not met its burden to establish that it is entitled to attorneys' fees." *Id.*

### D. Evanston Did Not Deny A Claim For Insurance Benefits.

#### 1. BSO Never Alleged That Evanston Denied Coverage.

This case does not concern a denied claim for insurance benefits. Instead, BSO asked Evanston to preliminarily opine on one issue: the number of occurrences resulting from the Parkland Shooting Incident. BSO then raced to the courthouse and filed suit based on the parties' disagreement on that limited issue without first exhausting at least one SIR and the AAD, incurring an "ultimate net loss" in excess of one SIR and the AAD, formally demanding indemnity for that loss, and allowing Evanston to respond to the demand with a coverage position based on the totality of the Policy's terms, conditions, and exclusions.

It bears emphasis that Evanston's Policy provides excess coverage, not primary coverage. Evanston has no duty to defend BSO and does not hire BSO's defense counsel. Evanston provides coverage only for an "ultimate net loss" exceeding both the $500,000 per-occurrence SIR and $500,000 AAD. BSO cannot properly seek coverage from Evanston until after exhausting both amounts, but BSO never alleged that it satisfied these prerequisites to coverage before filing suit.

Specifically, BSO alleged that it required a declaration only regarding the number of occurrences because it was unclear whether it must exhaust only one $500,000 SIR or separate $500,000 SIRs for each victim before seeking coverage. (Doc. 20 at ¶¶ 28–29). BSO alleged neither that it presented a claim for coverage to Evanston nor that it paid any judgments or settlements to the Parkland Shooting Incident victims that could constitute an "ultimate net loss." And even were that not clear from the face of BSO's amended complaint, it clarified in response to Evanston's motion to dismiss that it was "not yet seeking to have the Court direct Evanston to indemnify it." (Doc. 23 at 15). According to BSO, the parties' only controversy was "whether the Parkland Shooting Incident constitutes a single 'occurrence' or multiple 'occurrences' under the Policy." (Doc. 23 at 5).

The district court entered a Final Judgment consistent with the isolated relief BSO requested. The district court did not determine that Evanston incorrectly denied coverage for a claim and must now indemnify BSO. Rather, the district court declared only that "the Parkland Shooting Incident constitutes a single 'occurrence' under the Policy and that BSO must exhaust a single SIR of $500,000 under the Policy." (Doc. 111 at 1). No reading of BSO's amended complaint and the Final Judgment supports the district court's determination that Evanston incorrectly denied a claim for an ultimate net loss under the Policy. *See J.P.F.D. Inv. Corp.*, 769 F. App'x at 705 ("[W]here an insurance company has not incorrectly denied benefits

under the policy, an award of attorney's fees under § 627.428 is unwarranted.").

## 2. Evanston Did Not Deny Coverage Before Suit.

Even had BSO sued for a declaration of coverage, the district court incorrectly ruled that Evanston denied coverage before suit. BSO set this case in motion by asking Evanston to opine on the number of occurrences arising from the Parkland Shooting Incident before making a claim for coverage. Evanston obliged, sent two reservations of rights—not coverage denials—and provided its preliminary opinion that, based on settled Florida law, multiple gunshot incidents constitute separate occurrences for each victim of the shooting.

BSO did not demand indemnity in its subsequent August 2020 letter. In fact, BSO acknowledged that it could not yet seek to recover Policy benefits because it had not exhausted at least one $500,000 SIR and the separate $500,000 AAD, but BSO posited it would do so "in the very near future." (Doc. 124-1 at 1). BSO also did not assert that it paid any judgments or settlements to the Parkland Shooting Incident victims that could constitute an ultimate net loss.

Evanston never "outright denied" coverage for the Parkland Shooting Incident in its September 2020 response to BSO. *See Peninsula II Developers, Inc.*, 2018 WL at 1953841. Evanston simply reiterated its position as to the number of occurrences—the only issue BSO ever asked Evanston to address before suit. Evanston also reminded BSO that it must exhaust the separate $500,000 AAD,

which BSO glossed over in its prior communications. Evanston explained that it had "no obligation to pay 'ultimate net loss' unless and until the $500,00 SIR is exhausted for each occurrence (i.e., at least every claim/suit) and the [AAD] has been satisfied." (Doc. 123-2 at 4).

The district court erred in ruling that Evanston "unequivocally denied insurance benefits" in this letter. (Doc. 130 at 2). By BSO's own admission, no insurance benefits were owed to BSO at that the time. *See, e.g.*, *Tristar Lodging, Inc. v. Arch Specialty Ins. Co.*, 434 F. Supp. 2d 1286, 1298 (M.D. Fla. 2006) ("As stated above, this statute, and its predecessors, have consistently been interpreted to authorize recovery of attorney's fees from an insurer only when the insurer has wrongfully withheld payment of the proceeds of the policy"), *aff'd sub nom. Tristar Lodging, Inc.*, 215 F. App'x 879. This is because the determination of the number of occurrences is simply one piece of a broader coverage puzzle and does not, standing alone, entitle BSO to excess insurance benefits. BSO must also exhaust the AAD, incur an ultimate net loss, and allow Evanston to determine whether the Policy provides coverage for that ultimate net loss based on the totality of its terms, conditions, and exclusions.

Rather than denying coverage, Evanston reminded BSO that it must exhaust the AAD, not only the SIR, regardless of the number of occurrences. In that respect, Evanston properly "stopped short of disclaiming liability" for the Parkland Shooting

Incident and preserved its "right to contest coverage upon maturation of [BSO]'s action." *See Stonewall Ins. Co. v. W.W. Gay Mech. Contractor, Inc.*, 351 So. 2d 403, 403 (Fla. 1st DCA 1977). But BSO's potential future coverage action never matured because it did not exhaust the AAD at any point before or during suit and, therefore, it could not demand indemnity from Evanston. That is precisely why BSO never formally submitted a claim for benefits from Evanston in the two years that elapsed between the September 2020 letter and its September 2022 suit.

### 3. BSO Never Exhausted The AAD.

In its August 2020 letter, BSO informed Evanston that it incurred $750,000 in claim expenses (defense costs) and that it would soon surpass $1,000,000. (Doc. 124-1 at 1). BSO implied that incurring $1,000,000 in claim expenses would exhaust one $500,000 SIR and the $500,000 AAD, which BSO referred to as a "($500,000 + $500,00 corridor)." (Doc. 124-1 at 1). Based on BSO's flawed interpretation of the Policy, it believed it would exhaust its underlying self-insured limits "in the very near future." (Doc. 124-1 at 1).

The Policy's plain language belies BSO's assertion that it could exhaust the AAD solely by paying claim expenses in connection with the Parkland Shooting Incident. The Policy covers an "ultimate net loss" exceeding the $500,000 SIR. Although the standard definition of "ultimate net loss" includes claim expenses, the Policy was amended to provide that "'claim expenses' will not be included in the

calculation of 'ultimate net loss.'" (Doc. 20-3 at 54). Consequently, an "ultimate net loss" means the total amount of damages "awarded in favor of third parties that the insured is legally liable to pay because of 'bodily injury', 'property damage' or 'personal and advertising injury.'" (Doc. 20 at ¶ 12; Doc. 20-3 at 27).

Unlike the SIR, the AAD is exhausted only by paying judgments and settlements exceeding the $500,000 SIR on a claim. Therefore, BSO incurring more than $1,000,000 in claim expenses would not, standing alone, trigger Evanston's duty to provide coverage as BSO asserted in its letter. When Evanston raised this issue on summary judgment, BSO filed a claim ledger confirming that there are no claims in which the combined total of Paid Legal (claim expenses) and Paid BI/Liability (settlements/judgments) exceeds $500,000. (Doc. 99-2). As a result, none of the indemnity BSO paid on these claims contributed towards the AAD.

Since BSO could not seek excess coverage until it exhausted the AAD, Evanston could not have improperly denied coverage under these circumstances. *See Goldman v. United Servs. Auto. Ass'n*, 244 So. 3d 310, 312 (Fla. 4th DCA 2018) ("[I]t is the incorrect denial of benefits that triggers an award of attorney's fees under section 627.428."). Evanston certainly did not force BSO to file suit to obtain insurance benefits when BSO never presented a proper claim for coverage in the first instance. *See Sanderson v. Zurich Am. Ins. Co.*, 2015 WL 12838358, at *5 (M.D. Fla. Sept. 30, 2015) (denying entitlement where the insured "was not denied any

benefit due" and "was not forced to sue to receive such benefits"); *Travelers of Fla. v. Stormont*, 43 So. 3d 941, 944 (Fla. 3d DCA 2010) ("Where suit is filed without any necessity to do so, attorney's fees under section 627.428 will be denied.").

At bottom, BSO filed a declaratory judgment action to address a potential future claim for excess insurance benefits that it believed would soon ripen. Evanston disagreed with BSO's interpretation of "occurrence," but Evanston never denied coverage for an ultimate net loss arising from the Parkland Shooting Incident. Evanston explained how it *would* interpret one Policy term *if* BSO properly exhausted its retained limits and deductible and presented a claim for coverage, which BSO did not. Florida prohibits an award of attorneys' fees and costs for BSO absent a denial of coverage and ruling by the district court that policy benefits were due and owing to BSO. Therefore, this Court should reverse the Fee Judgment.

## CONCLUSION

For the reasons stated herein, Evanston respectfully requests that this Court reverse the Fee Judgment.

December 26, 2024.

Respectfully submitted,

**CARLTON FIELDS, P.A.**

*/s/ Joseph H. Lang, Jr.*
Joseph H. Lang, Jr. (FBN 059404)
4221 W. Boy Scout Boulevard
Tampa, FL 33607-5780
Telephone: (813) 223-7000
Facsimile: (813) 229-4133
Email: jlang@carltonfields.com

Samuel B. Spinner (FBN 118922)
700 N.W. 1st Avenue
Suite 1200
Miami, Florida 33136
Telephone: (305) 530-0050
Facsimile: (813) 530-0055
Email: sspinner@carltonfields.com

*Attorneys for Defendant/Appellant
Evanston Insurance Company*

## CERTIFICATE OF COMPLIANCE

The undersigned attorney hereby certifies that this Initial Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this response contains **7,253** words, excluding the parts exempted by Fed. R. App. P. 32(f). The undersigned attorney also certifies that this Initial Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word with Times New Roman 14-point font.

/s/ *Joseph H. Lang, Jr.*
Joseph H. Lang, Jr. (FBN 59404)

**CERTIFICATE OF SERVICE**

I certify that on December 26, 2024, I caused the foregoing to be e-filed with

the Clerk of Court using the CM/ECF system and served on counsel of record.

*/s/ Joseph H. Lang, Jr.*
Joseph H. Lang, Jr. (FBN 59404)
